My name is Mary Hofer. I represent the Social Security claimant in this case, Richard Welsh. This is not a case about credibility. This is not a case about whether the residual functional capacity assessment that the judge found is accurate. The only issue in this case is whether the administrative law judge satisfied his burden of showing that there are a significant number of jobs that Mr. Welsh can do in the regional economy. In this case, there is no dispute that Mr. Welsh is severely limited in what he can do. The judge found that he has the following restrictions. He can lift only 5 pounds. He cannot reach overhead with either of his arms. He's had multiple surgeries on both arms. He can only occasionally finger with his right, non-dominant hand. Occasionally, according to Social Security, means a third of the time or less. So a third of the day, he can't use his right hand to manipulate small objects. One third of the day, he cannot use his right hand. I'm sorry, one third of the day, he can use his right hand. He can occasionally finger, which means he can finger a third of the day. I thought you flipped it there. So these are significant restrictions that nobody disputes. The judge found that he has these limitations. At the hearing, the vocational expert testified that a person with these restrictions can do only two jobs. He can be a call-out operator or he can be a surveillance monitor. Now, that is two jobs out of 200 unskilled sedentary jobs that the agency has administratively noticed in Ruling 96-9P. The vocational expert testified that in these two job categories, there were 330 jobs. She went on to testify that Mr. Welsh could not do all of these jobs because of his restrictions. The vocational expert then went on to testify that this limitation in his ability to work represented a significant erosion of the sedentary occupational base. So she specifically said this is a significant erosion of the sedentary occupational base. She also, and that's at it, that her testimony went beyond the requirements of the Dictionary of Occupational Titles. So this is a relatively rare case. Mr. Welsh has significant restrictions. There is a severe erosion of the sedentary occupational base. The vocational expert's testimony conflicts with the Dictionary of Occupational Titles. And when she did give us a number of jobs, it was indefinite. She couldn't say exactly how many there were, but it was something less than 330. There are two Social Security rulings that address these issues. SSR 96-9P applies to claimants who can do less than a full range of sedentary work. SSR 004P addresses situations where the vocational expert's testimony conflicts with the DOT. In making his fifth step determination, the judge was required to consider both of these rulings in determining whether or not the number of jobs that the vocational expert testified to was significant. The judge failed to do this. With regard to the one about the 96-9P, the judge didn't cite that, but didn't the judge consider the factors that are listed there? No. In fact, the judge considered the wrong ruling. The judge actually looked at a different ruling, 83-12, which deals with people who are limited to light work and have limited difficulty using one of their hands. Was this issue raised in the district court? Yes. It was raised in the district court, and I am unclear about what the district court judge said about the 96-9P argument. I'm not sure he said anything. I recall that he mostly looked at the 004P argument in the conflict with the Dictionary of Occupational Titles. You believe it was raised? I believe so. I would have to look, but I didn't make major changes in the briefs when I went from district court to the Eighth Circuit. I can check and tell you. Let me stay with 96-9P. You seem to rely on an example in your briefs, and that example is no longer part of the rule, so why should we be swayed by that example? Because we still have 96-9P. 96-9P does refer to an example, but it's saying this is an example of something that represents a significant erosion of the sedentary occupational base. Earlier in 96-9P, the ruling says that when the sedentary occupational base is significantly eroded, then a finding of disability usually applies. The ruling says that if there's a significant erosion, it equals usually disabled. But doesn't it usually apply because most unskilled sedentary jobs require repetitive hand-finger action? Yes. And here, the RFC eliminated that part of the base, and usually doesn't mean always. So it seems to me the ALJ, we don't require perfection in opinion writing, and certainly not comprehensiveness. If the ALJ answers the substance of the rule in the way the RFC is defined, no error. When the ALJ doesn't even mention the rule, and in fact mentions a different rule that deals with light work, and that actually gives a broader leeway to the ALJ to look to vocational testimony, then there's a question about whether the ALJ... A broader leeway. I thought you said the ALJ cut it from 200 jobs down to two. The... That means that usually... Yes. The other 198 jobs that the ALJ would have followed 96-9P. But the judge has to... The fact that the VE, using the ALJ's RFC, which is not challenged, can find a limited number of jobs, 96-9P has been obeyed, if you will. The judge has to go beyond finding that there are somewhat less than 330 jobs in order to find a significant number. And that's where 96-9P comes in. 96-9P says that you don't have to prove that there are zero jobs. The claimant doesn't have to prove that there are zero jobs. You can't come up with a case that says if you don't cite the proper SSR ruling, we reverse, period. This court in, I think it's the Hall case, said, remanded in order for the administrative law judge to consider that ruling. He obviously hadn't considered the ruling, and the judge needed to... But that's not obvious here. It's obvious that the judge did consider the substance of it. The judge considered a different ruling that dealt with people who were able to... It doesn't matter. We don't care about numbers. We're not a glorified bureaucracy. We're looking at the substance of the decision. But the difference between the two rulings is critical. Light versus sedentary, it's important in some context. I don't understand the significance here. In the light, in 83-12, which the judge looked at, the ruling says, look to vocational specialists in this kind of situation. In 96-9, the ruling says, normally a finding of disabled. It doesn't say in 96-9, look to the vocational specialist. It says normally disabled. I understand the position. Can I ask you a different question? On the issue you've raised about the conflict between or the argument that there's a conflict between the vocational expert's testimony and the DOT. Doesn't the vocational expert explain that? Is your position that that explanation is insufficient or that she didn't explain it at all? My position is that her explanation is insufficient. She testified that she had personal experience observing the two jobs, call out operator and surveillance system monitor. I need to actually correct my brief on this. In reading through her testimony, she did say that she had observed the call out operator and the surveillance monitor both. I had incorrectly said she didn't observe the call out operator. She did say she had observed them both. She said she had observed the surveillance monitor. She didn't say this, but the evidence shows that she observed the surveillance monitor being done in a manner that was different than what the DOT describes. She observed it in parking ramps and buildings. The DOT says it's done in public transportation facilities. She observed it being done differently. She said she'd done it only a few times in connection with both of the jobs. She agreed that not all of the 330 jobs would be able, that he would be able to do all of those jobs. How many does there have to be? I don't think there is a magic number. But I think the ALJ needs to say why he thinks that this is enough in this particular case. He's overcoming a conflict with the DOT. He's got indefinite numbers. And he's got 96-9P, which seems to suggest that normally a person with this few number of jobs should be found to be disabled. No, I didn't see it. I didn't look carefully. But my impression was the cases you cited, which I didn't read, did not prevail on this issue. What's your best case where, on the number of jobs, the claimant succeeded in overturning the agency's decision? The Hall? Not just the remand to consider, but where the ruling was that the ALJ didn't find enough. The number of jobs the ALJ identified was not significant. Denial of disability reversed. I think you're right. Normally, the number of jobs isn't a great issue for us to be raising. I mean, 330, depending on the universe, it's a lot, it's not a lot. But we're not looking at just that issue. We're looking at a judge who didn't follow, didn't consider. But your issue 3 raises that as a separate issue. The ALJ, there's not substantial evidence supporting the ALJ's ultimate decision because the ALJ did not identify a significant number of jobs. What we're looking at is a combination of all three things. In determining the significant number of jobs, the judge should have considered 96-9P. The judge should have looked at the way the conflict, the DOT, the vocational expert's testimony conflicted with the DOT. The judge should have considered the fact that the judge's numbers were indefinite and not exactly done the way, not exactly relied on the DOT's descriptions. Judge should have considered all those things in making that determination about whether or not it's a significant number. And so it's everything combined. All by itself, there aren't any cases that say that any number of jobs is or isn't consistent. There's significant, there's no magic number. But what there is, is an idea that in order to have a fair decision, the judge needs to look at Social Security's rulings in making a determination about whether or not it's a significant number. Well, I thought your brief argued that the ALJ's got some obligation to go out into the local market and research specifically the here are the two jobs in question. Ask around of employers, I mean, the government, I think the agency properly says that you're urging a completely unrealistic burden. What the judge has is the Dictionary of Occupational Titles. The agency has recognized that as the standard. Plus the VE quantification. And the agency says if the VE's going to disagree with that, then the VE has to support her opinion. But still on the number of jobs. I know you're arguing it's a combination, but you argue this one separately and you want us to say, you want us to impose all kinds of investigative burdens on the ALJ with respect to the number of jobs. If the VE relies on gross SMSA or some other kinds of statistics, that's not good enough to meet the ALJ's burden to develop the record, is your argument. I want to know where... If everything else was good, if the VE was consistent with the DOT, if the judge had considered 96-9P, and if the VE's testimony was well supported, then 330 jobs would be fine. Okay, so you're dropping number three as a freestanding issue. Well, I suppose so. It is dependent on the others. If we're supposed to write number three so as to impose some sort of survey obligations with respect to job quantities in a local market... No. No. My time's up. I'm just saying that all of these things go into determining whether or not that number of jobs is significant. Thank you. Thank you for the clarification. Ms. Erickson? Okay. May it please the court and counsel. As you know, my name is Diana Erickson, and I am here today on behalf of the Commissioner of Social Security. In this benefits case, as you've heard, appellant presents a variety of challenges to the testimony of a vocational expert upon whose testimony an ALJ relied in finding that the plaintiff, who, as we absolutely agree, has a very complex RFC, could perform a significant number of jobs in the national economy. The ALJ did exactly what the district court had wanted the ALJ to do on a remand, and that action, in discussion with the VE, absolutely accords with this court's case law, with the policy, and with the DOT itself. The district court was satisfied when it came back to them, and this court should be as well. A little context in this case, this has been going on since 2006, and when the plaintiff was in a serious motorcycle accident, and there's no doubt he had some significant injuries. He did recover somewhat, and regained the ability to do, engage in some of his previous activities, including hunting, and working just very part-time, checking identification in a bar. With regard, getting to the issues, was Mr. Welsh represented at the hearing, the administrative hearing? Yes. I haven't read the record. Did either lawyer ever, did the term SSR 96-9P ever get out on the table, either orally or in written submissions? I don't believe the actual citation to 96-9P came up. There were two administrative hearings in this case. The second one was almost exclusively devoted to discussion with the vocational expert and counsel about the various aspects of the jobs. The terms bilateral manual dexterity did come up at one point, I believe about page 937. It sort of came up in the abstract, in discussion of the reduction of the sedentary base. In talking about that reduction, and also about the, well, I'm interested in this conflict issue, because the vocational expert said, I did this personal observation, but what about the mental or reasoning limitations, I guess, the reasoning limitations? Those didn't seem to be discussed by the VE. Were they? Not much. It didn't really come up at the hearing, because she's limited to the plaintiff was unskilled at work. And to my knowledge, they talked about a lot of things. They talked about the weight, the computers, the one arm, the reaching briefly, but I don't believe it actually came up during the discussion. Is the reasoning, I mean, I think that some of these had, there was a reasoning level three that is required. And are you saying that the record shows that this, the limitations this plaintiff had met that reasoning, was capable of doing reasoning level three? Because in your brief, you argue about the time it takes to learn something versus the reasoning level, which I think are different standards. They are different. There is some correlation between SVP and reasoning in the whole skill level, but the reasoning is slightly different, absolutely. And that was actually a point I hoped to raise today, because the reasoning is under the definitions in the DOT, is general educational development. So it's a designation, usually sort of correlates with like high school, graduate school, and so on. So in this case, with someone with an associate's degree, we're well above the reasoning three. Also the point that plaintiff makes in her brief about that SVP may deal with the skill level, but we still have that judgment piece in the, that comes with reasoning and isn't quantified for in the SVP. That actually was accounted for by the unskilled limitation. The agency's definition of unskilled work, which is all these jobs are unskilled, and they talked about it, is actually that the jobs require little to no judgment. So that meant that the jobs that were talked about are unskilled and accounted for that reasoning issue. And does the, why is the explanation that the ALJ gave about the conflict, well, I mean the ALJ didn't actually think there was a conflict, right? Right, there was no conflict. But the VE said there was, so how can the ALJ find that? The VE actually said that there was not a conflict. The VE said it was not inconsistent with the DOT. All of her testimony is that these were all, and actually, of course, that she repeatedly stated, one, that she stayed within the parameters of the hypothetical, but then she also stated repeatedly that the DOT posed all possible tasks in broad categories, and that's consistent with the DOT itself, the case law, the agency guidance, all broad possible tasks. And so when she was giving, discussing these jobs in relation to this complex RFC, she was within those broad categories, and therefore it was not a conflict. It wasn't inconsistent. It was absolutely consistent. And there's, that's, and that's consistent with the DOT itself. Well, but that's true in every situation, right? I mean, every time you say, I mean, that's just a general, that's not really an explanation. Well, and actually, Your Honor, I've had a case when there has been a conflict, a direct conflict. It was actually the Jordan case cited in my brief. And in that case, you had the broad categories like sedentary work. In that case, the RFC was for a reduced range of sedentary, unskilled work, much like this one. And in that, the vocational expert started testifying immediately about a job, and he said, this job is light, light and unskilled. And everybody immediately recognized that as a conflict, because that's a conflict between the categories. The category of sedentary work is, under the DOT, there's only five options. There's sedentary, light, medium, heavy, and very heavy. So all those 22,000 jobs in the DOT have one of those categories. So if you have something, a job that doesn't require any listing or any weight, that's going to go under the sedentary category, because there's no other place to put it. But if you have a direct conflict, is when you have someone who, a job that was listed as sedentary, but they're looking at light jobs, or vice versa. I also had in that case, too, that was skilled versus unskilled in the same way. So it's when the categories are completely different that you see the strong conflict in the testimony. In this case, and in a lot of complex cases, this is within the category. And actually, ruling 96-9P is an example of that. In that ruling, there's the part about manipulative dexterity, which we've all discussed in the briefs. There's also a part about sedentary work. And in that part, the agency's guidance points out that in the broad classifier base of sedentary work, there will be people whose RFC is for less than that, but in different ranges. So if they're just, they can only lift a pound or two, if it's only a slight erosion, that still counts as the full sedentary base. Conversely, if they can't lift any weight at all, or there's only a few pounds, that's one where the agency says, well, that's probably a finding of disability, because that's so far outside the base. But for the cases in between, for the cases like this one, where there's five pounds, where there's some sort of limiting within the broad category, so we're still within the broad category, it's not conflict, it's within, the vocational expert is what you need. You need a vocational resource, some sort of expert, who can take a look at these broad guidelines and find it. And it's not a conflict, that's a discussion within the broad categories of the DOT. There was also a limitation, I think, on bilateral lifting above, and that didn't seem to be addressed. It was the reaching overhead. Okay, reaching, yeah. Was that addressed? They talked about it briefly at the hearing, but most of the discussion between counsel and the vocational expert at both hearings was for forward reaching, because that seemed more indicative of the jobs that we were talking about. So there was some discussion of that. There was not a specific discussion, I think, of the overhead. The ALJ said there was an overhead limitation, and the parties, and then the ALJ said, the vocational expert said she testified within the parameters of that limitation. So if there was a conflict, then, you know, if we were to decide that there was a conflict, even though we disagreed, then what level of deference or what level of review do we give to the ALJs? Or do we just say, if there is a conflict and the ALJ said there wasn't, then we need to remand it? Well, I think, let me just go back and have more hearings. I think, absolutely, we can look, because he still talked about some of the discussion about why it wasn't a conflict, similarly explains why there would be a reasonable explanation if this court deems it a conflict instead. And that, of course, was that the DOT is broad, that there is her professional experience, that she stayed within the parameters of the hypothetical question herself, that she had done surveys, that she's done professional expertise, that she looked at industry publications. I mean, there's not much more. I don't know what else she could do to meet her burden in this case or the ALJ. So I think if this court deems that it actually was a conflict... I think there's a harmless error component here, because if we disagree with the categorization of conflict versus no conflict, but the issue was adequately developed and the decision supported by evidence, it doesn't seem to me that would be a reversible error. Right. And I, of course, agree with that, because I think we've developed this issue at length by two hearings, by written submissions, by so on, and I don't think there's anything more that the ALJ or the vocational expert could do. I think one of the difficulties here, of course, is that we don't have a definition of conflict in the regulations or anything. It's a little... Certainly not in our case. No, I could not find one. And so then we look immediately to the ALJ starts relying on the vocational experts. And in that case in which I had a conflict where there was the VE in the Jordan case, the vocational expert said, I know there's a conflict, and let me explain. And in this case, of course, the VE said, no, there's not a conflict. I'm within the broad confines. And the ALJ brought it up, because, of course, the district court had found a conflict and said, the district court said, there's a conflict here. What do you say about that? Why is it not? And so they went at great length. And I don't think there's anything to hang the whole case on the definition of conflict would mean we probably wouldn't get anywhere. Well, the distinction between what's a conflict and what's an explanation for a conflict is the problem. I think if you just are saying... If you just say, well, the DOT is always going to be the far reaches and the broadest thing, then there's never going to be a conflict, right? Are you saying it can only be if they're saying light versus sedentary, or they get the whole category wrong that there'd be a conflict? Well, I think categories is the obvious conflict. And the conflicts that I have seen vocational experts say have been a conflict. There may be others. I think that in most cases the RFC isn't as complex as this and we don't have all these different aspects to it. I think there are many cases in which it fits fairly well and there's no question. But in this case, just because of all the details, it became a complex RFC. And that's exactly the time when you need a vocational expert who said there was no conflict. Perhaps conflict is the wrong word. It may well be. I would guess it originated with the courts and not with the commissioner. I unfortunately don't know much about the genesis of SSR 004P. That's what we have. Conflict really is anything that should be developed. Right. And I think because the ALJ in these cases or is required to under the policy guidance ask about conflicts or possible conflicts, then in almost every case we have some discussion immediately about whether it's a conflict or not. That would be a reasonable explanation even if the definition of conflict is different for different... Can I ask you on another issue? The issue about the number of jobs. So we've got 330 jobs or the national number is of course larger, but some unspecified number of those would not apply here and some unspecified number of them are part-time, right? So there's some unspecified number of them would be beyond the plaintiff's RFC and some unspecified number would be part-time, so not substantial, right? How do we know how many there are? Well, Your Honor, I would actually say that the vocational expert didn't necessarily say that all the jobs would be beyond. She did admit that there were part-time jobs. Then on the colloquy, like that there may be these additional tasks and so on, they're not really relevant to the broad categorization. So I'm not sure that we can really say that the vocational expert said that she's including jobs that are beyond. But these are representative numbers based on all the data we have and the expert testified that in her expert opinion, she was using the database and the numbers that she's absolutely comfortable with based on her experience and the experience of her professional colleagues and so that these numbers she was absolutely comfortable with were a fair representation of the jobs available, even if they included part-time work, which of course this Court has held before in DIPL that they don't have to try to subtract that out. And if we look again, those national numbers are 36,000, and that also is relevant. There are cases, I know counsel says they have to be regional, at least in her brief, but the case she cites also looked at national numbers, which are very small. And this Court's cases, including the case of Weiler, cited in the brief, W-E-I-E-L W-E-I-L-E-R, also looked only at national numbers. So that's certainly a relevant thing. So even if we say that the 330 is not maybe quite accurate, even though the vocational expert was absolutely comfortable with these numbers, we can look at the national numbers and overall that's going to be plenty. Or at least I'd argue that it's substantial evidence in support of the ALJ's decision. I think, just to sum up, of course, this is a case of a complex RFC. We don't see these all the time, but they don't fit in the broad confines of the DOT. They don't fit in the broad confines of the easy cases for us. We need the vocational expert, and we need to rely on their testimony. This is the Kemp case cited later after remand. This was the Kemp case that came back and went back and had two hearings, two administrative law judge hearings about the client, about what they were going to do, and in the end, the vocational expert stayed within the parameters of the hypothetical question, explained why it wasn't a conflict, or explained why it would be a conflict that was easily explained. And the ALJ did exactly what he was required to do. Thus, we respectfully request that if this isn't enough, the commissioner's going to have a very hard time in any complex case to meet our burden of production. Accordingly, we just respectfully request the court affirm. Thank you. Ms. Hope, we're out of time. No, Your Honor. I'll give you a minute. I think we understand the issues, but if you want to respond to something. Okay. I won't actually address any of the issues we've addressed before, but I did want to respond to the reasoning question. I think the conflict in the DOT with regard to the level 3 reasoning that's required for a surveillance monitor job has to do with the decision making requirement. That is his limitation according to the residual functional capacity. And the decision making ability that is identified in a level 3 reasoning is above the judge specifically limited his ability to make decisions. The V.E. did testify that she was going beyond the DOT. And that's at transcript 966. She also said it was consistent with the DOT, but said she went beyond it. So I think any of those cases we're dealing with a situation where SS004P requires a resolution of that conflict. And that's it. Thank you very much. Thank you counsel. The case has been very well argued and well briefed as well. And we will take it under advisement. The court will be in recess.